UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

|  |  |
|---|---|
| THE STATE OF MICHIGAN,<br><br>*Plaintiff,*<br><br>v.<br><br>EXPRESS SCRIPTS, INC.;<br>EVERNORTH HEALTH, INC.,<br>formerly known as Express Scripts<br>Holding Company; and PRIME<br>THERAPEUTICS LLC,<br><br>*Defendants.* | Case No. 2:25-cv-11215-JJCG-KGA<br><br>Hon. Jonathan J.C. Grey<br><br>Hon. Kimberly G. Altman |

**THE STATE'S OPPOSITION TO DEFENDANTS'
MOTION TO STAY DISCOVERY**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES..................................................................iii, iv, v

CONCISE STATEMENT OF THE ISSUE PRESENTED....................................vi

TABLE OF CONTROLLING OR MOST APPROPRIATE AUTHORITY..........vii

TABLE OF EXHIBITS......................................................................viii

I.    INTRODUCTION ...............................................................................1

II.   BACKGROUND ................................................................................3

III.  LEGAL STANDARD.........................................................................6

IV.   ARGUMENT.....................................................................................8

   A.   Defendants Have Not Shown Good Cause For a Stay of Discovery. .............8

     i.   Defendants' motion to dismiss is unlikely to be granted in full. ................8

       1.   Similar antitrust claims to those asserted by the State have already withstood scrutiny in other litigations.....................................................8

       2.   Defendants' remaining bases for dismissal are meritless.......................10

     ii.   No other "special circumstances" exist justifying a stay...........................14

   B.   A Stay Would Result in Prejudice to the State (and the Public) That Outweighs any Minimal Discovery Burden Defendants Would Face..........15

     i. The discovery sought by the State imposes no significant burden on Defendants..........................................................................................15

     ii. The State and its citizens will be prejudiced by a stay...............................19

   C.   The State Does Not Seek to Supplement Its Complaint with This Discovery...................................................................................20

V.    CONCLUSION .................................................................................21

# TABLE OF AUTHORITIES

**Cases**

*Associated Gen. Contractors of Cal., Inc. v. California State Council
of Carpenters*,
 459 U.S. 519 (1983) ...................................................................................11

*Bowens v. Columbus Metro. Libr. Bd. of Trs.*,
 No. CIV.A. 2:10-cv-00219, 2010 WL 3719245
 (S.D. Ohio Sept. 16, 2010) .......................................................................15

*Charvat v. NMP, LLC*,
 No. 2:09-cv-209, 2009 WL 3210379 (S.D. Ohio Sept. 30, 2009) ...............10

*Equal Emp. Opportunity Comm'n v. P.A.M. Transp., Inc.*,
 No. 09-cv-13851, 2010 WL 11545049 (E.D. Mich. Dec. 10, 2010) .............7

*F.T.C. v. Mylan Lab'ys, Inc.*,
 62 F. Supp. 2d 25 (D.D.C.) .......................................................................12

*Hoxie v. Livingston Cnty.*,
 No. 09-cv-10725, 2010 WL 822401 (E.D. Mich. Mar. 4, 2010) ..................19

*In re AME Church Emp. Ret. Fund Litig.*,
 No. 22-MD-03035, 2025 WL 1364445 (W.D. Tenn. Mar. 27, 2025) ..........17

*In re Heparin Prods. Liab. Litig.*,
 273 F.R.D. 399 (N.D. Ohio 2011) .............................................................18

*In re NASDAQ Mkt.-Makers Antitrust Litig.*,
 929 F. Supp. 723 (S.D.N.Y. 1996)..............................................................17

*In re Travel Agent Comm'n Antitrust Litig.*,
 583 F.3d 896 (6th Cir. 2009)................................................................11, 14

*Klehr v. A.O. Smith Corp.*,
 521 U.S. 179 (1997)...................................................................................11

*Manns v. PHH Mortg. Servs.*,
  No. 2:22-cv-3507, 2023 WL 5198748 (S.D. Ohio Aug. 14, 2023) ......7, 8, 14

*Meyer v. Bank of Am., N.A.*,
  No. 2:18-cv-218, 2018 WL 6436268 (S.D. Ohio Dec. 7, 2018)...................18

*Moyer v. Gov't Emps. Ins. Co.*,
  114 F.4th 563 (6th Cir. 2024) ...................................................................20

*Northstar Energy LLC v. Encana Corp.*,
  No. 1:13-cv-200, 2014 WL 5343423 (W.D. Mich. Mar. 10, 2014)...............9

*Ohio Bell Tel. Co. v. Glob. NAPs Ohio, Inc.*,
  No. 2:06-cv-0549, 2008 WL 641252 (S.D. Ohio Mar. 4, 2008)...................14

*Osterhaus Pharmacy, Inc. v. Express Scripts, Inc.*,
  768 F. Supp. 3d 1186 (W.D. Wash. 2025)...............................................4, 10

*Parker v. Tenneco Inc.*,
  No. 23-cv-10816, 2024 WL 5004326 (E.D. Mich. Dec. 6, 2024) ................14

*Pictsweet Co. v. R.D. Offutt Co.*,
  No. 3:19-cv-0722, 2020 WL 12968432 (M.D. Tenn. Apr. 23, 2020) ..........18

*Proto Gage, Inc. v. Fed. Ins. Co.*,
  No. 21-12286, 2022 WL 1598621 (E.D. Mich. May 19, 2022) ..................18

*Raymond James & Assocs., Inc. v. 50 N. Front St., TN, LLC*,
  No. 18-cv-2104, 2018 WL 6521493 (W.D. Tenn. Oct. 3, 2018).................16

*United States v. Wells*,
  No. 06-10589, 2006 WL 3203905 (E.D. Mich. Nov. 3, 2006)....................18

*Wagle v. Corizon*,
  No. 4:19-cv-13787, 2021 WL 12180662 (E.D. Mich. Sept. 24, 2021) ......7, 8

*Williamson v. Recovery Ltd. P'ship*,
  No. 2:06-cv-0292, 2010 WL 546349 (S.D. Ohio Feb. 10, 2010) ..................8

*Young v. Mesa Underwriters Specialty Ins. Co.*,
No. 2:19-cv-3820, 2020 WL 7407735 (S.D. Ohio Oct. 19, 2020) .................6

**Statutes**

15 U.S.C. § 15c .............................................................................................11
15 U.S.C. § 26 ...............................................................................................11
M.C.L. § 445.771 ..........................................................................................12
M.C.L. § 445.778(1).......................................................................................12
M.C.L. § 445.778(2).......................................................................................12

**Rules**

Fed. R. Civ. P. 26(d)........................................................................................7

**Other Authorities**

*AIDS Healthcare Foundation v. Prime Therapeutics LLC*,
No. 01-22-0000-2756, Interim Award on the Merits
(Am. Arb. Ass'n Jan.17, 2025) (Widman, Arb.)......................................4

Judge Jonathan J.C. Grey, Practice Guidelines: Discovery
(E.D. Mich. July 6, 2025)................................................................................18

Mariel Rodak, *It's About Time: A Systems Thinking Analysis of the Litigation
Finance Industry and Its Effect on Settlement*,
155 U. PA. L. REV. 503, 528 (2006)................................................................19

Phillip E. Areeda & Herbert Hovenkamp,
*Antitrust Law* ¶ 350b (4th and 5th eds., Supp. 2024)............................12

Restatement (Second) of Torts, § 821B (1979)........................................13

## CONCISE STATEMENT OF THE ISSUE PRESENTED

Whether this Court should stay discovery pending resolution of Defendants' motion to dismiss where that motion is unlikely to dispose of the entire case, the stay would delay fact-finding for at least five months (and likely much longer), and the discovery sought consists of a narrow, single RFP and a third-party subpoena that imposes minimal burden on Defendants.

Plaintiff's Answer:  NO.

## TABLE OF CONTROLLING OR MOST APPROPRIATE AUTHORITY

### A. STATUTES AND RULES:

1. Federal Rules of Civil Procedure 8, 12, 26(c)

### B. CASES:

1. *Williamson v. Recovery Ltd. P'ship*, No. 2:06-cv-0292, 2010 WL 546349 (S.D. Ohio Feb. 10, 2010)

2. *Manns v. PHH Mortg. Servs.*, No. 2:22-cv-3507, 2023 WL 5198748 (S.D. Ohio Aug. 14, 2023)

3. *Wagle v. Corizon*, No. 4:19-cv-13787, 2021 WL 12180662 (E.D. Mich. Sept. 24, 2021)

## TABLE OF EXHIBITS

1. **Exhibit A ("Ex. A")**: Declaration of Natasha J. Fernández-Silber Regarding the State's Opposition to Defendants' Motion to Stay Discovery

2. **Exhibit B ("Ex. B")**: Plaintiff's First Set of Requests for Production to Defendants.

3. **Exhibit C ("Ex. C")**: Subpoena to Produce Documents on AIDS Healthcare Foundation.

## I.  <u>INTRODUCTION</u>

This case involves a matter of critical importance to the health and economic welfare of the State of Michigan. Defendants Express Scripts, Inc. ("ESI"), Evernorth Health, Inc. ("Evernorth"), and Prime Therapeutics LLC ("Prime") (together, "Defendants") are pharmacy benefits managers ("PBMs") that operate in the State of Michigan. Plaintiff, the Attorney General of Michigan (the "State"), acting on behalf of the People, alleges that Defendants have engaged in an illegal agreement to fix and suppress the compensation paid to retail pharmacies for prescription drugs (the "Prime-ESI Agreement" or "Agreement"). The State alleges that this Agreement has reduced compensation amounts paid to Michigan pharmacies below competitive levels, contributing to significant financial distress for pharmacies across the State, as well as pharmacy closures. While the Agreement may contribute to the Defendants' bottom lines, it does so by reducing Michiganders' access to critical pharmacy services. The State brings claims for damages and injunctive relief under state and federal antitrust laws, as well as for public nuisance and unjust enrichment.

After requesting nearly two additional months to respond to the State's complaint, Defendants now move for a complete stay of fact discovery. However, they have not shown good cause for a stay. Defendants' primary argument for a stay is that they have filed a motion to dismiss, which they believe will be granted in its

entirety. But a garden-variety motion to dismiss, like the one Defendants have filed here, does not constitute good cause for a stay. Nor is Defendants' motion likely to be granted. Virtually *identical* price-fixing allegations to those asserted by the State have already withstood scrutiny in two separate proceedings involving Defendants: a proposed antitrust class action targeting the Prime-ESI Agreement that recently survived a motion to dismiss in the Western District of Washington, *Osterhaus v. ESI*, and a price-fixing suit brought by the AIDS Health Foundation ("AHF") against Prime, which recently resulted in a final judgment in AHF's favor of $10 million from the American Arbitration Association. The State's overlapping antitrust claims are highly likely to survive here, just as in *Osterhaus* and the AHF arbitration.

Nor have Defendants shown that the burden of responding to the State's discovery requests outweighs the hardship a stay will impose on the State. The discovery that the State seeks pending resolution of Defendants' motion to dismiss is extremely limited. From Defendants, the State seeks only the written contracts constituting or amending the Prime-ESI Agreement, which can be obtained on a "go-get" basis (meaning without any custodial searches). The notion that pulling contracts off a hard drive imposes a significant burden or cost on Defendants, all of which are large corporations represented by sophisticated counsel, is absurd. The State has also served a single third-party subpoena (on AHF) seeking materials from the AHF/Prime arbitration. Any minimal burden associated with complying with

2

that subpoena will not be borne by the Defendants, but by AHF, which does not object. Defendants should not be permitted to hold up the fact-finding process here on the basis of phantom burdens.

Meanwhile, there is no question that if discovery is stayed pending resolution of the motion to dismiss (which could take months), the State and the public interest will be harmed. Defendants' alleged misconduct is ongoing, and the State is seeking injunctive relief. And unlike private plaintiffs, the State has a responsibility to protect the public from anticompetitive harms by seeking speedy relief when it finds a violation of the antitrust laws. Requiring the State to wait months to gather evidence and pursue its case will burden not only the State, but the public interest in swift determination of this Action.

The State thus respectfully requests that the Court deny Defendants' motion to stay discovery and allow limited discovery to proceed.

## II.  BACKGROUND

The State brought this action (the "Action") on April 28, 2025, alleging a horizontal agreement among Defendants to fix and suppress pharmacy compensation rates for prescription drugs (the "Prime-ESI Agreement") in violation of federal and state antitrust laws. It also alleges that Defendants' misconduct has caused a public nuisance (by contributing to pharmacy closures, which limit access to healthcare) and unjustly enriched Defendants. Compl. ¶¶ 2, 9, 19, ECF No. 1.

3

The State's Action was not the first to target the Prime-ESI Agreement. In January 2022, AHF brought a similar suit, in a non-public arbitration forum, against Prime. AHF alleged that its pharmacy was harmed by the same unlawful Agreement between Prime and ESI, and the suit ultimately resulted in an interim award in favor of AHF of $10 million. *AIDS Healthcare Foundation v. Prime Therapeutics LLC*, No. 01-22-0000-2756, Interim Award on the Merits (Am. Arb. Ass'n Jan. 17, 2025) (Widman, Arb.).[1]

In March 2024, Osterhaus Pharmacy, Inc. ("Osterhaus") brought a putative class action lawsuit on behalf of pharmacists against ESI also alleging antitrust violations related to the Prime-ESI Agreement (among other misconduct). In February 2025, the district court in that action denied ESI's motion to dismiss, finding Osterhaus had plausibly alleged a horizontal price-fixing agreement between Prime and ESI. *See Osterhaus Pharmacy, Inc. v. Express Scripts, Inc.*, 768 F. Supp. 3d 1186, 1197-98 (W.D. Wash. 2025).

After the State filed this Action, Defendants requested an extension on their time to answer or otherwise move to dismiss the complaint of nearly two months. Ex. A, Fernández-Silber Decl. ¶ 4. The State granted the request on the condition that it not hold up the discovery process. Stip. ¶¶ 1-2, ECF No. 9. On June 17, 2025,

---

[1] Available at https://s3.us-east-1.amazonaws.com/publiceditorial.qtxasset.com /Prime+AHF+Interim+Award+(01-22-0000-2756).pdf. As an arbitration, the AHF/Prime proceedings are not public.

4

the Parties held a Rule 26(f) Conference, during which the State indicated that it planned to pursue some limited discovery pending resolution of the forthcoming motion to dismiss. Ex. A, Fernández-Silber Decl. ¶ 6. Specifically, the State planned to seek all written contracts, and amendments thereto, constituting the alleged Prime-ESI Agreement, and to serve a third-party subpoena on AHF for documents produced in its arbitration against Prime, which are highly relevant to this Action given the overlapping allegations. *Id.* Defendants offered to produce a copy of the agreement if the State agreed not to issue a subpoena to AHF and agreed to stay all discovery pending the motion to dismiss. Ex. A, Fernández-Silber Decl. ¶ 7. The State declined this offer, and Defendants confirmed their plan to file a motion to stay discovery in full. *Id.*

On July 9, 2025, the State served a singular request for production on Defendants seeking the following:

> [F]inal and/or executed written Agreement(s) between [Defendants] or Affiliate thereof, including any subsequent amendments thereto, effectuating or relating to the Prime-ESI Agreement alleged in the Complaint (¶¶ 89-106), which Defendants announced in December 2019 and referenced at https://www.prnewswire.com/news-releases/express-scripts-and-prime-therapeutics-collaborate-to-deliver-more-affordable-care-to-more-than-100-million-americans-300978059.html.

Ex. B, Plaintiff's First Set of Requests for Production to Defendants. Defendants have not responded to the request, but included a copy of a single contract, which

they call the Prime-ESI "Subcontract Agreement," as an exhibit to their motion to dismiss, which they filed under seal on July 25, 2025. ECF No. 28-1.

The State also served a subpoena on AHF for all discovery, motions, orders, and hearing transcripts from the AHF/Prime arbitration. Ex. C, Subpoena to Produce Documents on AIDS Healthcare Foundation. Counsel for the State has been in contact with counsel for AHF, and AHF is willing to comply with the subpoena, pending this Court's resolution of Defendants' motion for a stay, to the extent it is not in violation of any protective orders. Ex. A, Fernández-Silber Decl. ¶ 11.

Notwithstanding Defendants' motion to stay discovery, the parties have continued to negotiate the requisite case management protocols that allow discovery to commence. On July 1, 2025, the parties submitted a preliminary case schedule, which set forth deadlines for the negotiation of all protocols regarding discovery issues. Joint R. 26(f) Rpt., ECF No. 16. Consistent with that schedule, the parties negotiated a Protective Order, which the Court entered on July 23, 2025. Stip. Prot. Order, ECF No. 24.

## III.  <u>LEGAL STANDARD</u>

The Federal Rules make clear that "[p]laintiffs deserve to have their claims heard in a timely and efficient manner." *Young v. Mesa Underwriters Specialty Ins. Co.*, No. 2:19-cv-3820, 2020 WL 7407735, at *3 (S.D. Ohio Oct. 19, 2020).

6

Accordingly, discovery can begin as soon as the 26(f) conference has been held, and there is no requirement that pleadings be settled first. *See* Fed. R. Civ. P. 26(d).

A party seeking to stay discovery must show "good cause" and demonstrate why the burden of responding to discovery demands outweighs the hardship imposed on the party requesting discovery. *Wagle v. Corizon*, No. 4:19-cv-13787, 2021 WL 12180662, at *1 (E.D. Mich. Sept. 24, 2021) (citation omitted). In balancing these interests, courts look to "any societal interests which are implicated by either proceeding or postponing discovery, including the efficient use of judicial resources." *Id.*

With respect to the good cause analysis, it is well-established that the mere filing a motion to dismiss is "insufficient cause to justify the issuance of a stay[]" of discovery. *Equal Emp. Opportunity Comm'n v. P.A.M. Transp., Inc.*, No. 09-cv-13851, 2010 WL 11545049, at *1 (E.D. Mich. Dec. 10, 2010). Movants can overcome the "high bar" necessary to show good cause only in "certain special circumstances," such as when dismissal is almost certain, or when defendants raise defenses like immunity or exhaustion that discovery would undermine. *Manns v. PHH Mortg. Servs.*, No. 2:22-cv-3507, 2023 WL 5198748, at *2 (S.D. Ohio Aug. 14, 2023) (citation omitted) (denying motion to stay discovery); *see also Wagle*, 2021 WL 12180662, at *2 (granting a motion to stay where defendant raised exhaustion claims). Conversely, where a motion to dismiss raises defenses related

7

to personal jurisdiction or venue, courts often decline discovery stays, because the parties can resume litigating the case in the appropriate court after dismissal. *See id.*

## IV.  ARGUMENT

### A.  Defendants Have Not Shown Good Cause For a Stay of Discovery.

Good cause for a stay generally does not exist "unless it is patent that the case lacks merit and will almost certainly be dismissed," *Williamson v. Recovery Ltd. P'ship*, No. 2:06-cv-0292, 2010 WL 546349, at *2 (S.D. Ohio Feb. 10, 2010), or defendants raise defenses like immunity or exhaustion that discovery would undermine. *Id.*; *Manns*, 2023 WL 5198748, at *2; *Wagle*, 2021 WL 12180662, at *2.  No such circumstance exists here. The State's claims are not "certain" to be dismissed, but are instead highly likely to withstand scrutiny, as did similar claims brought in two separate but related actions targeting the same price-fixing conspiracy. Nor are any other "special circumstances," like immunity or exhaustion defenses, present here.  *See Manns*, 2023 WL 5198748, at *2. Instead, this is "exactly the type of 'garden variety' case where a stay [of discovery] is not warranted." *Williamson*, 2010 WL 546349, at *2.

### i.      Defendants' motion to dismiss is unlikely to be granted in full.

#### 1.   Similar antitrust claims to those asserted by the State have already withstood scrutiny in other litigations.

Defendants' motion to stay discovery should be denied because there are no grounds on which their motion to dismiss is almost certain, let alone likely, to

succeed. Indeed, the State's primary antitrust allegation — that ESI and Prime entered into a horizonal agreement to fix pharmacy reimbursement rates in 2019 — has already withstood scrutiny in two separate litigations: *AHF v. Prime*, a private arbitration that recently resulted in an interim award of $10 million in favor of AHF, and *Osterhaus Pharmacy, Inc. v. Express Scripts, Inc.*, a putative class action on behalf of pharmacists that recently survived a motion to dismiss in the Western District of Washington.

Judge Jones's order denying ESI's motion to dismiss in *Osterhaus* makes clear why Defendants' motion to dismiss is likely to meet the same fate here. In *Osterhaus*, Judge Jones held that the plaintiffs plausibly alleged that ESI and Prime had entered an agreement to share ESI's market power; that the alleged agreement constituted a horizontal price-fixing conspiracy, which was *per se* unlawful under the antitrust laws; and that the alleged agreement allowed Prime and ESI to obtain supra-competitive profits at the expense of pharmacies. 768 F. Supp. 3d at 1194-96. This was sufficient to state a conspiracy claim under federal antitrust law.[2]  In so ruling, Judge Jones cast aside many of the same incorrect legal arguments that

---

[2] *Osterhaus* involves federal antitrust claims only, while the State asserts both federal and state antitrust claims. Substantively, the Michigan Antitrust Reform Act "is patterned after the Sherman Antitrust Act," but is broader in some respects. *Northstar Energy LLC v. Encana Corp.*, No. 1:13-cv-200, 2014 WL 5343423, at *9 (W.D. Mich. Mar. 10, 2014).

Defendants make here, including, importantly, that the Prime-ESI Agreement should be assessed under the "rule of reason" because its supposedly benefits consumers (a question of fact that cannot be resolved on a motion to dismiss, and which, in any event, does not undermine *per se* treatment). *See Osterhaus*, 768 F. Supp. 3d at 1197-98; Mot. to Dismiss, ECF No. 28 at 35. The State's claims here largely mirror those of the *Osterhaus* plaintiffs, except that the State's claims are more detailed. Accordingly, there is every reason to believe the instant claims will survive Defendants' motion to dismiss.

Given that the State's primary antitrust claims have withstood scrutiny in two separate, prior cases, they are highly likely to survive Defendants' motion to dismiss here. In this context, where dismissal is unlikely, imposing a stay will only unnecessarily prolong the litigation and hinder judicial efficiency. *See Charvat v. NMP, LLC*, No. 2:09-cv-209, 2009 WL 3210379, at *2 (S.D. Ohio Sept. 30, 2009) (denying motion to stay discovery pending resolution of motion to dismiss where plaintiff had successfully litigated "numerous cases in the state courts" involving the same "types of issues" and noting that imposing stay "would not really save [the parties] any resources in the long run, but would delay the ultimate resolution of the case").

    2.   <u>Defendants' remaining bases for dismissal are meritless.</u>

As the State will argue in its forthcoming opposition, Defendants' remaining

arguments in favor of their motion to dismiss are also meritless.

**First**, the State's antitrust claims are timely under the continuing violation doctrine.[3] It is black antitrust letter law that each purchase or sale pursuant to a price-fixing agreement constitutes an "overt act" which starts the statute of limitations anew. *See Klehr v. A.O. Smith Corp.*, 521 U.S. 179, 189 (1997); *In re Travel Agent Comm'n Antitrust Litig.*, 583 F.3d 896, 902 (6th Cir. 2009) (recognizing that "a new § 1 claim arises each time a company sells a price-fixed product" and citing *Klehr*). Because Defendants' price-fixing conspiracy is ongoing, each time a pharmacy receives a reimbursement at a fixed price pursuant to the Prime-ESI Agreement, the Defendants have committed an overt act.

**Second**, the State has standing — both in its capacity as *parens patriae,* and as required to establish "antitrust standing" — under the prudential standing doctrine. *See Associated Gen. Contractors of Cal., Inc. v. California State Council of Carpenters*, 459 U.S. 519, 542–44 (1983). Specifically, the State's federal antitrust claims, which seek only injunctive relief, are permitted under the Sherman and Clayton Acts.  *See* 15 U.S.C. § 26. And while federal antitrust law limits *parens patriae* recovery for monetary damages to those suffered by "natural persons," 15 U.S.C. § 15c, Michigan state law contains no such limitation. *See* M.C.L.

---

[3] As will be discussed more fully in the State's forthcoming opposition to Defendants' motion to dismiss, the State's claims are also timely under the fraudulent concealment doctrine. *See* Compl. ¶¶ 145-162.

11

§ 445.778(1) (allowing the State to "bring an action for appropriate injunctive or other equitable relief, actual damages sustained by reason of a violation of this act . . ."); M.C.L. § 445.771 (defining "person" for purposes of Michigan state antitrust statute to mean any "individual, corporation, business trust, partnership, association, or any other legal entity"); M.C.L. § 445.778(2) ("Any other person . . . injured directly or indirectly in his or her business or property by a violation of [Michigan state antitrust statute] may bring an action for . . . actual damages sustained" and "[i]f the trier of fact finds that the violation is flagrant, it may increase recovery to an amount not in excess of 3 times the actual damages sustained by reason of a violation of this act."); *F.T.C. v. Mylan Lab'ys, Inc.*, 62 F. Supp. 2d 25, 48 (D.D.C.) (denying motion to dismiss *parens patriae* claims brought by State of Michigan seeking treble damages for pharmacies and other purchasers under Michigan antitrust statute).

Moreover, the chief injury asserted by the State — that Michigan pharmacies receive lower prices as a result of Defendants' unlawful agreement, Compl., ¶¶ 168, 206 — is a quintessential type of antitrust injury, which is plainly sufficient to confer standing on the State acting in its *parens patriae* authority. *See* Phillip E. Areeda & Herbert Hovenkamp, *Antitrust Law* ¶ 350b (4th and 5th eds., Supp. 2024) ("When buyers agree illegally to pay suppliers less than the prices that would otherwise prevail, . . . [t]he suppliers' loss [] constitutes antitrust injury[.]"). As the State will

12

argue in its forthcoming opposition to Defendants' motion to dismiss, Defendants' arguments to the contrary misapply antitrust standing doctrine.

*Third,* the State's public nuisance and unjust enrichment claims are also well-pled. A public nuisance is an unreasonable interference with a right common to the general public. Restatement (Second) of Torts, § 821B (1979). The State alleges that Defendants, through their anticompetitive conduct, have intentionally contributed to the creation of pharmacy deserts in the State of Michigan, a phenomenon that poses significant public health risks to Michigan's residents, and thus constitutes an unreasonable interference with a right common to the general public. *See id.* ("unreasonable interference" includes conduct that significantly interferes with public health, safety, peace, comfort, or convenience).

The State also adequately alleges that Defendants have unjustly benefited from their unlawful agreement, at the expense of pharmacists (whether or not they have formally contracted with both Prime and ESI), as well as consumers, who are directly harmed by Defendants' anticompetitive conduct. This is enough to state an unjust enrichment claim.

In any event, even if the State's non-antitrust claims are dismissed, the Complaint would still survive the motion to dismiss on the basis of the State's antitrust claims alone.

13

### ii. No other "special circumstances" exist justifying a stay.

Where, as here, dismissal is not certain, other "special circumstances" — beyond the filing a routine motion to dismiss — are needed to justify a stay of discovery. Such "special circumstances" include the assertion of a defense like immunity or exhaustion that discovery would undermine. *Manns*, 2023 WL 5198748, at *2. But no such circumstances exist here. Defendants' motion to dismiss largely attacks the merits of the State's claims. And while Defendants argue the State's antitrust claims are untimely, this argument plainly conflicts with black letter law making clear that the continuing violation doctrine applies in price-fixing cases. *In re Travel Agent Comm'n Antitrust Litig.*, 583 F.3d at 902. Moreover, the case Defendants cite for the proposition that statute of limitations issues should be decided prior to discovery, *Parker v. Tenneco Inc.*, in fact holds that statute of limitations issues can only "sometimes" justify a stay of discovery; and, indeed, the stay requested there was denied. No. 23-cv-10816, 2024 WL 5004326, at *4 (E.D. Mich. Dec. 6, 2024). As Defendants fail to meet the high bar necessary to show good cause for their requested stay, they should not "receive a free pass on their discovery obligations." *Ohio Bell Tel. Co. v. Glob. NAPs Ohio, Inc.*, No. 2:06-cv-0549, 2008 WL 641252, at *2 (S.D. Ohio Mar. 4, 2008).

14

**B.** **A Stay Would Result in Prejudice to the State (and the Public) That Outweighs any Minimal Discovery Burden Defendants Would Face.**

### i. The discovery sought by the State imposes no significant burden on Defendants.

Lack of good cause notwithstanding, Plaintiffs took care to ensure that Defendants are not faced with burdensome discovery at this juncture. From Defendants themselves, the State only seeks the documents constituting and/or amending the Agreement (one of which, the Prime-ESI "Subcontract Agreement," Defendants already found and attached to their motion to dismiss as an exhibit).

These materials are not burdensome to produce as they are specific documents stored on a hard drive which do not require any custodial searches to locate. *See Bowens v. Columbus Metro. Libr. Bd. of Trs.*, No. CIV.A. 2:10-cv-00219, 2010 WL 3719245, at *2 (S.D. Ohio Sept. 16, 2010) (observing that where "a document request can be answered easily by searching the file cabinets of one employee or, by a routine business operation, one database, it is not burdensome[]" and denying motion to stay discovery). This kind of minimal, targeted discovery in no way resembles the sort of fulsome, data-intensive discovery that generally occurs in antitrust litigation, which Defendants describe as "notoriously expensive." Mot. to Dismiss, ECF No. 28 at 19.

The State also served a third-party subpoena on AHF, which seeks the documents produced in its arbitration against Prime, as well as pleadings and briefing materials that would be public if the matter were before a federal court. *See*

15

Ex. C. The State has been in contact with counsel for AHF, who has confirmed that AHF is willing to produce the documents requested, provided that any productions comply with any relevant protective orders or other prohibitions on discovery. Ex. A, Fernández-Silber Decl. ¶ 11.

The AHF subpoena imposes almost no burden on Defendants either.  Contrary to their assertions, Defendants do not need to review each document in the AHF matter for "relevance, overbreadth, proportionality, and other considerations." Mot. to Stay Discovery, ECF No. 25 at 12. Any burden associated with doing a relevance review of the requested AHF materials would be entirely self-imposed. And AHF's allegations against Prime neatly overlap with those of the State in this Action, so the documents in that matter will almost all be highly relevant in this one. Defendants have also provided no explanation as to why they would need to re-do a privilege review for documents they already produced in another action, and any privileged documents should already have been identified and redacted or withheld.

Nor will Defendants be meaningfully burdened by having to conduct a confidentiality review. The protective orders in both actions give ample protection to Defendants' confidentiality concerns and prevent the disclosure of confidential information. *See Raymond James & Assocs., Inc. v. 50 N. Front St.*, TN, LLC, No. 18-cv-2104, 2018 WL 6521493, at *5 (W.D. Tenn. Oct. 3, 2018) (finding the protective order sufficient to alleviate any concerns related to disclosure of

16

confidential information). And the Protective Order in this Action allows Defendants to designate all the documents produced under the AHF subpoena as "Highly Confidential-AEO" for 30 days, Protective Or. at XII, and Plaintiffs would agree to retaining that confidentiality status until 30 days after the motion to dismiss is decided to relieve Defendants of any burden associated with a confidentiality review.[4]

In reality, the third-party discovery the State seeks from AHF will *minimize* future burdens on Defendants. By obtaining early access to discovery from the AHF arbitration, the State will have a better sense of what further information it needs to prove its allegations and can be more thoughtful and efficient in engaging in discovery once it commences in earnest, which may reduce future burdens on Defendants. Indeed, courts routinely require the production of similar material produced in other related actions for this reason—because it makes discovery more efficient. *See, e.g.*, *In re AME Church Emp. Ret. Fund Litig.*, No. 22-MD-03035, 2025 WL 1364445, at *3 (W.D. Tenn. Mar. 27, 2025) (ordering production of "all arbitration materials" from a related proceeding); *In re NASDAQ Mkt.-Makers Antitrust Litig.*, 929 F. Supp. 723, 725 (S.D.N.Y. 1996) (ordering production of

---

[4] Defendant Prime, which was a party to the AHF arbitration, has *already* reviewed the documents it produced in that proceeding for relevance, confidentiality, and privilege issues.

related CID materials). Defendants' concerns about "cloned discovery" are misplaced.

In any event, as a non-party to the AHF subpoena, Defendants cannot object to it on the basis of undue burden. *Meyer v. Bank of Am., N.A.*, No. 2:18-cv-218, 2018 WL 6436268, at *5 (S.D. Ohio Dec. 7, 2018) (citation omitted). And courts are clear that any costs associated with reviewing documents that are produced by a third party "are not serious enough for good cause for protection." *Proto Gage, Inc. v. Fed. Ins. Co.*, No. 21-12286, 2022 WL 1598621, at *2 (E.D. Mich. May 19, 2022).[5]

Even if Defendants had standing to stay the AHF subpoena on the basis of burden, and they do not, they fail to "submit affidavits or other evidence to substantiate its objections" that requested discovery is unduly burdensome, as is required by this Court. *See* Judge Jonathan J.C. Grey, Practice Guidelines: Discovery (E.D. Mich. July 6, 2025); *see also In re Heparin Prods. Liab. Litig.*, 273 F.R.D. 399, 410 (N.D. Ohio 2011) ("A responding party 'must show specifically how each discovery request is burdensome and oppressive by submitting affidavits or offering

---

[5] As a general matter, defendants generally lack standing to quash a subpoena directed at a nonparty for any reason. *United States v. Wells*, No. 06-10589, 2006 WL 3203905, at *2 (E.D. Mich. Nov. 3, 2006). In those rare cases where a party may assert some "personal right or privilege" over a nonparty's documents, this exception does not extend to confidentiality, which is not "in itself grounds for quashing a subpoena." *Pictsweet Co. v. R.D. Offutt Co.*, No. 3:19-cv-0722, 2020 WL 12968432, at *3 (M.D. Tenn. Apr. 23, 2020) (quotations omitted).

evidence revealing the nature of the burden."). Absent any evidence to substantiate with specificity that the requested discovery is burdensome, or proposals for how the discovery can be made less burdensome, Defendants' motion should be denied. *See id.; Hoxie v. Livingston Cnty.*, No. 09-cv-10725, 2010 WL 822401, at *1 (E.D. Mich. Mar. 4, 2010) (Majzoub, J.) (noting "[t]he wheels of justice would surely grind to a halt if discovery were stayed pending dispositive motions and based on . . . generic allegations of undue burden and expens[e]").

Finally, in case there were any question, the State does not intend to serve any other discovery until after the motion to dismiss is ruled on, so Defendants' speculative concerns about hypothetical future discovery can be disregarded.

### ii. The State and its citizens will be prejudiced by a stay.

If Defendants' motion for a stay is granted, the State and its citizens will be significantly prejudiced. The State alleges anticompetitive conduct with widespread implications for the consumers, businesses, public health, and the overall economy of the State of Michigan. And the State seeks injunctive relief to bring an end to this misconduct as soon as possible. The delay in discovery Defendants seek will, without a doubt, delay judgment in this action, prolonging the period of time that the public will suffer as a result of the Defendants' misconduct. It may also result in a decrease in evidentiary quality and witness availability, which could harm the State's ability to prosecute this action. *See* Mariel Rodak, *It's About Time: A Systems*

19

*Thinking Analysis of the Litigation Finance Industry and Its Effect on Settlement*, 155 U. PA. L. REV. 503, 528 (2006). Even if Defendants were able to show any real burden, the public interest in swift determination of the Action would still militate against imposition of a stay.

C.   **The State Does Not Seek to Supplement Its Complaint with This Discovery.**

Finally, Defendants' suggestion that the State improperly seeks this discovery to bolster its complaint, Mot. to Stay Discovery, ECF No. at 9, is completely unfounded. The State's complaint is well-pled and factually supported, so its survival is not dependent on additional discovery. The State seeks this discovery simply to avoid delay and expedite the case generally. Perhaps Defendants, who are improperly trying to supplement their motion to dismiss arguments with documentary evidence extrinsic to the complaint, have projected their own motivations onto the State. As a general matter, extrinsic evidence should not be evaluated until summary judgement, once a full record exists. Accordingly, the State intends to oppose the Defendants' inclusion of extrinsic evidence in support of its motion to dismiss, including because Defendants have not provided the complete set of controlling contracts and amendments that comprise the Prime-ESI Agreement, attaching only a single "subcontract agreement." *See Moyer v. Gov't Emps. Ins. Co.*, 114 F.4th 563, 565 (6th Cir. 2024).

## V.  <u>CONCLUSION</u>

For all the foregoing reasons, the State respectfully requests that Defendants'

motion to stay discovery be denied.


Respectfully submitted,


<u>/s/ Natasha J. Fernández-Silber</u>
Natasha J. Fernández-Silber* (P83334)
**EDELSON PC**
350 North LaSalle Street, 14th Floor
Chicago, Illinois 60654
Tel: (312) 589-6370
Fax: (312) 589-6378
nfernandezsilber@edelson.com
*Admitted in New York and Michigan only

*Special Acting Attorney General*
*for the State of Michigan*

<u>/s/ Jonathan S. Comish</u>
Jonathan S. Comish (P86211)
**MICHIGAN DEPARTMENT OF**
**ATTORNEY GENERAL**
Corporate Oversight Division
P.O. Box 30736
Lansing, MI 48909
Tel: (517) 335-7632
comishj@michigan.gov

*Assistant Attorney General for the State of*
*Michigan*


21