**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

|  |  |
|---|---|
| THE STATE OF MICHIGAN, <br><br> Plaintiff, <br><br> v. <br><br> EXPRESS SCRIPTS, INC.; EVERNORTH HEALTH, INC., formerly known as Express Scripts Holding Company; and PRIME THERAPEUTICS LLC, <br><br> Defendants. | Case No. 2:25-cv-11215-JJCG-KGA <br><br> Hon. Jonathan J.C. Grey <br><br> Hon. Kimberly G. Altman |

**CASE MANAGEMENT ORDER NO. 1**
**ORDER REGARDING PRODUCTION OF**
**ELECTRONICALLY STORED INFORMATION AND HARD COPY**
**DOCUMENTS**

This Order Regarding Production of Electronically Stored Information and Hard Copy Documents ("ESI Protocol Order") shall govern the Parties in the above-captioned case (the "Litigation").

**I.  GENERAL PROVISIONS**

a.  **Applicability:** This ESI Protocol Order will govern the preservation, search, processing, and production of electronically stored information ("ESI") and hard copy documents and related matters as a supplement to the Federal Rules of Civil Procedure.

b.  **Deadlines:** References to schedules and deadlines in this ESI Protocol Order shall comply with Fed. R. Civ. P. 6 with respect to computing deadlines.

c.    **Confidential Information:** For the avoidance of doubt, nothing herein shall contradict the Parties' rights and obligations governed by the Stipulated Protective Order entered by the Court (the "Protective Order"). (ECF No. 24.)

d.    **Governing Principles:** To further the application of the proportionality standard in discovery, the Parties shall endeavor to draft requests for production of ESI and hard-copy documents in a reasonably targeted, clear, and specific manner. This agreement is intended to assist the Parties in identifying relevant, responsive information that has been stored electronically and is proportional to the needs of the case. The agreement does not supplant the Parties' obligations to comply with the Federal Rules of Civil Procedure, nor does it expand those obligations unless specifically stated herein. The parties agree to use their best efforts to comply with and resolve any differences concerning compliance with any provisions of this ESI Protocol Order. The Parties shall cooperate in good faith in the exchange of information concerning data systems and ESI as may be necessary to facilitate the discovery and exchange of ESI in these proceedings. If a Producing Party cannot comply in a particular circumstance with this ESI Protocol Order, such Party shall promptly inform the receiving Party in writing why compliance with the ESI Protocol Order is not reasonable or feasible. No Party may seek relief from the Court concerning compliance or non-compliance with the ESI Protocol Order until it has met and conferred with the other Party in a good faith effort to resolve or narrow the area of disagreement.

## II.   **DEFINED TERMS**

a.    **The Litigation:** the "Litigation" shall mean the proceedings with case caption *State v. Express Scripts, Inc., et al.*, No. 2:25-cv-11215 (E.D. Mich.).

b.    **Document:** "Document" shall have the same meaning as set forth in Federal Rule of Civil Procedure 34.

c.    **Hard-Copy Document:** "Hard-Copy Document" shall mean any Document that exists in physical, tangible form, including but not limited to Documents printed on paper and other materials that are not ESI.

2

d.     **Electronically-Stored Information (ESI):** "ESI" shall have the same meaning as "electronically stored information" set forth in Federal Rules of Civil Procedure 26(f) and 34(a)(1)(A), and includes all information stored in any electronic medium, including but not limited to information contained on computers, servers, cloud-based systems, and any other electronic storage devices or systems.

e.     **Party:** "Party" shall mean the named plaintiff and the named defendants in the Litigation.

f.     **Requesting Party:** "Requesting Party" shall mean the Party serving discovery requests to produce Documents.

g.     **Producing Party:** "Producing Party" shall mean the Party producing Documents, electronically stored information, or other materials in response to discovery requests pursuant to the Federal Rules of Civil Procedure

h.     **Structured Data System:** "Structured Data System" shall mean any electronically stored information that is organized in a systematic format, including but not limited to databases, data warehouses, customer relationship management systems, enterprise resource planning systems, and other electronic repositories where data is stored in organized fields, tables, or similar structured formats.

i.     **Family Documents:** "Family Documents" shall mean a collection of electronically stored information consisting of a Parent Document and all associated Child Documents that are linked to or embedded within the Parent Document.

j.     **Parent Document:** "Parent Document" shall mean the primary electronically stored information to which other Documents are attached, embedded, or hyperlinked.

k.     **Child Document:** "Child Document" shall mean any attachment, embedded document, or linked file that is associated with a Parent Document.

l.     **Review Automation:** "Review Automation" shall refer to any technology used to accelerate the review process such as Technology Assisted Review ("TAR"), Generative Artificial Intelligence ("GenAI"), or any other tool used for this purpose.

3

### III. GENERAL PRODUCTION FORMAT PROTOCOLS FOR DOCUMENTS ORIGINATING AS ESI

a. **Production Format.** Except for structured data and specified file types addressed in "Production of Native Items" below, all production images will be produced as single page Group IV TIFF format using a 300 DPI setting with an accompanying text file. The text file will contain full text of each electronic document or the OCR text of a redacted document ("Extracted Text"). Acceptable formats for production include either native files, or single-page TIFF files (which shall be single-page Group IV TIFFs of at least 300 DPI resolution with 1 bit depth, and one TIFF file per page of the ESI item, with corresponding multi-page text and necessary load files as specified in Appendix 2). Each image will have a file name that is the unique Bates number of that image. Extracted text files shall contain any hidden content, tracked changes, edits, comments, notes, and other similar information of the ESI item. Extracted Text shall be provided in a searchable ASCII or UTF-8 text format (or Unicode text format if the text is in a foreign language). To the extent certain documents cannot be produced in one of the above formats, the Parties shall meet and confer.

b. **Production of Native Items:** Unless otherwise specified herein, the Parties shall produce the following types of responsive, non-privileged ESI in native format: emails, spreadsheets, presentations, word-processing documents, and multimedia audio/visual files, such as voice and video recordings (e.g., .wav, .mpeg, and .avi). For email ESI, the native format shall mean the data file for the individual email (i.e., .msg) not the container file for the mailbox itself (i.e., .pst). In addition to producing the file types expressly enumerated in this section in native format, the Producing Party shall produce a single-page image sheet specifying that the ESI has been "produced in native format" and endorsed with the Bates number and any applicable Confidentiality Designation. The corresponding load file shall include NativeLink information for each native file that is produced. When the native file is produced, the Producing Party shall preserve the integrity of the electronic document's contents, *i.e.,* its original formatting and metadata. A "NativeLink" metadata entry for each document being produced in native format shall be included in the data load file indicating the relative file path to each native file on the Production Media. Native Files should be produced with extracted text and

4

applicable metadata fields as set forth in Appendix 1 to the extent that such metadata can be automatically populated by the Producing Party's discovery vendor or as otherwise specified herein.

c. **Requests for Other Native Files:** In addition to the ESI required under the above provision to be produced in native format, a Party may request production of one or more ESI items in native format by identifying by Bates number(s) the specific ESI and explaining the reason for the request, which the Producing Party will consider in good faith. In the event that the Parties cannot agree on whether a requested ESI should be produced in native format, they may present the dispute to the Court.

d. **Structured Data:** If responsive ESI exists in any Structured Data System, the Parties agree to meet and confer to discuss appropriate forms of production. If the Parties cannot reach agreement, the matter may be submitted to the Court for resolution.

e. **Instant Messages/Text Messages/Ephemeral Messages:** The Parties shall meet and confer prior to the production of instant messages/text messages, to determine the best production format for such ESI. For the avoidance of doubt, this provision does not constitute an admission or a waiver of any argument regarding the relevance or proportionality of the production of any instant messages or text messages.

f. **Non-Standard Files:** If a response to a discovery request reasonably requires the production of ESI in a format other than those specified herein, the Parties will meet and confer to determine the appropriate production format, accounting for the Governing Principles of this Order.

g. **Bates Numbering:**

   i. Native files shall have a filename that includes the Bates number, along with the corresponding Confidentiality Designation.

   ii. All images must be assigned a Bates number that must always: (1) be unique across the entire document production; (2) maintain a constant prefix and length (e.g., ten-digits and 0-padded) across the entire production; (3) contain no special characters or embedded spaces, except hyphens or underscores;

(4) be sequential within a given document; and (5) identify the Producing Party using a partial, full, or abbreviated version of their name.

iii. If a Bates number or set of Bates numbers is skipped in a production, the Producing Party will so note in a cover letter accompanying the production.

iv. To the greatest extent practicable, the Producing Party will brand all images at a location that does not obscure any part of the underlying images. If Bates number branding obscures any part of an underlying image, upon request of the Receiving Party, the Producing Party shall re-produce the affected ESI items with the branding in a different location that does not obscure the underlying images.

h.   **Family Relationships:** Family relationships within a Document Family (i.e., the association between an email or calendar items and all attachments, and embedded files) shall be preserved during ESI collection and processing. Family Documents are to be produced contemporaneously and sequentially, with Child Documents immediately after each Parent Document. If any ESI of any Family Documents is responsive, the Parent and Child Documents shall be produced (with the exception of empty files), subject to any claim of privilege.

i.   **Load Files:** All production items will be provided with a delimited data file or "load file," which will include both an image cross-reference load file (e.g., an Opticon ("OPT") file), as well as a metadata ("DAT") file with the metadata fields identified in Appendix 1 for each ESI item, to the extent that such metadata can be automatically populated by the Producing Party's discovery vendor. The image cross-reference file must reference each image in the corresponding production (including native placeholders and placeholder docs for family members withheld for privilege or work-product protection). The total number of ESI items in a production's data load file should match the total number of designated document breaks in the Image Load files in the production. All load files should be produced using standard Concordance delimiters. The parties shall adhere to the production delivery requirements for these load files set forth in Appendix 2.

j.    **Color:** To the extent practicable, documents shall be produced in color The Requesting Party may request color images of Documents where color is reasonably necessary to their comprehension or use, and such request shall not unreasonably be denied. Documents produced in color shall be produced as single-page, JPG images with JPG compression and a high-quality setting to not degrade the original image.

## IV.   CONFIDENTIALITY DESIGNATIONS

a.    **Confidentiality Designations:** If a particular hard-copy document or ESI item qualifies for confidential treatment pursuant to the Protective Order entered by the Court in the Litigation, the designation shall be branded on the document's image at a location that does not obliterate or obscure any part of the underlying images. This designation shall be included in the appropriate data field in the load file. If confidentiality designation branding obliterates or obscures any part of an underlying image, upon request of the receiving Party, the producing Party shall re-produce the affected ESI items with the branding in a different location that does not obliterate or obscure the underlying images.

b.    **Materials Produced in Other Litigation or Investigations:** To the extent that a producing Party intends to satisfy a request for production by producing materials produced in a different litigation or investigation, at the time the producing Party discloses its search methodology it shall disclose in writing (a) the fact that the producing Party intends to use materials produced in a different litigation or investigation to satisfy certain request(s) for production, (b) the case caption or information necessary to identify the entity conducting the investigation, (c) a copy of the requests that caused the materials to be produced in a different litigation or investigation, and (d) the search methodology (e.g., a list of the search terms, technology-assisted review process, custodians, non-custodial sources, and date limitations) that were used to generate those materials. This provision would not apply solely because materials produced in this litigation have been produced in a different litigation.

## V.    PRODUCTION FORMAT FOR DOCUMENTS ORIGINATING AS HARD COPY DOCUMENTS.

a.    **OCR:** A Party producing hard-copy documents will scan and OCR hard-copy documents. The Parties will take all reasonable steps to

7

generate accurate OCR. To the extent the Producing Party encounters a significant burden or cost in complying with this provision, the Parties shall meet and confer.

b. **Production Format:** Responsive paper Documents shall be converted to single-page image files and produced following the specifications set forth for image in section II(a) of this protocol, and shall be produced with load, text, and image files specified in Appendix 2 and sections II(b) and (i) of this protocol, and the OCR text specified in section II(b)(i) of this protocol.

c. **Coding Fields:** The following information shall be produced in the load file accompanying production of paper documents: (a) BegBates, (b) EndBates, (c) BegAttach (if applicable), (d) EndAttach (if applicable), (e) Custodian, (f) Text Path, (g) Confidentiality, (h) Redaction, (i) Priv_Type, and (j) Prod Volume. Additionally, all paper documents will be produced with a coding field named "Paper Document" marked with a "Y."

d. **Unitization of Hard-Copy Documents:** The Parties shall use reasonable best efforts to ensure that responsive hard-copy documents, including those in files and binders, are logically unitized for production. When scanning hard-copy documents for production, distinct documents shall not be merged into a single record and single documents shall not be split into multiple records. Where a Document or group of Documents has an identification spine, "post-it note," or any other label, the information on the label shall be scanned and produced to the extent practicable. The Parties will use best efforts to ensure that hard-copy records for a particular Document Custodian are produced in consecutive Bates number order. Documents that were scanned and converted to electronic format prior to collection and processing for purposes of this Action are considered ESI and not hard copy documents.

## VI. ESI METADATA FORMAT AND PROCESSING ISSUES

a. **Excluded Files:** The Parties agree that the Producing Party will use its best efforts to exclude from collection and production those files with hash values identical to those included in the National Software Reference Library reference data set (RDS Hash), a sub-project of the National Institute of Standards and Technology ("NIST"), of known

traceable system and application files by using a commercially reasonable hash identification process. This process is commonly referred to as "De-NISTing." Any other system files that a Producing Party proposes to exclude from collection and/or search shall be disclosed to the requesting Party for its consideration.

b. **Metadata Fields and Processing**:

   i. **Fields:** Except as otherwise set forth in this ESI Protocol Order, to the extent that such metadata can be automatically populated by the Producing Party's discovery vendor, ESI files shall be produced with the data fields set forth in Appendix 1.

   ii. **Date and Time:** No Party shall modify the date or time as contained in any original ESI.

   iii. **Time Zone:** All Documents shall be produced so as to show the metadata date in Eastern Time or Coordinated Universal Time.

   iv. **Auto Date/Time Stamps:** To the extent practicable, ESI items shall be processed to preserve the date/time shown in the document as it was last saved, not the date of collection or processing.

   v. **Manual Population:** The Parties are not obligated to manually populate any of the fields in Appendix 1 if such fields cannot be extracted from the document using an automated process, with the exception of the following fields: (a) BegBates, (b) EndBates, (c) BegAttach (if applicable), (d) EndAttach (if applicable), (e) all Custodians of the document, (f) Confidentiality, (g) Redaction, (h) Priv_Type, (i) TextPath, and (k) prod volume.

c. **Redaction**:

   i. **Redacted Documents:** Documents may be redacted only to exclude sensitive personally identifiable information ("SPII"), "Confidential Health Information" (defined to include protected health information, as defined under the Health Insurance Portability and Accountability Act of 1996 and its implementing regulations), or content protected by privilege or the work-product doctrine as required by U.S. Federal or State law.

Redacted Documents shall identify in some manner on the production copy (such as through highlighting in black or through the use of redaction boxes) the location and extent of redacted information and the basis for the redaction (i.e., "A/C Privilege", "SPII", "Work Product"). The redacted text shall be excluded from the redacted document's OCR text file. Where a responsive document contains both redacted and nonredacted content, the Producing Party shall produce the remainder of the non-redacted portions of the document. Only metadata fields that would reveal privileged information may be excluded from redacted documents. Redacted versions of Documents being produced in image format may be produced as image files with OCR text in lieu of extracted text. If the document would otherwise have been produced in native format under this Protocol, all other requirements for images in Section II(a) must be met. If a native document that requires redaction is difficult to convert to image or is not reasonably usable when converted to image format, the parties agree to meet and confer.

ii. **Redactions in Native Files:** If the redacted Document would otherwise be produced as a native file, then it should be produced as a native file with redactions to the extent technologically practicable.

d. **Email Collection and Processing:** The Parties are permitted to use commercially reasonable Email threading tools to avoid review and production of duplicative information contained within an existing email thread in another document being reviewed and produced, but under no circumstances will email thread suppression (a) eliminate the ability of a requesting Party to identify every custodian sent or received an email, or (b) remove from a production any unique branches and/or attachments contained within an email thread. Parties may request unthreaded copies of particular documents in advance of depositions, which will not be denied absent good cause. The producing party shall provide a metadata "date" field and an 'EMAIL PARTICIPANTS' field that identifies dates, senders and recipients for Emails in the same Email thread that are removed through threading.

e. **Rolling Productions:** The Parties agree to produce Documents in phases on a rolling basis consistent with the Court's orders relating to scheduling.

10

f.   **De-duplication:** If exact duplicate Documents reside within a Party s ESI data set, the Party shall produce only a single copy of a responsive document. "Exact duplicate" shall mean bit-for-bit identity of the document content and metadata with exact Hash Value matches determined by MD5, SHA-1, SHA26, or any other agreed-upon (and disclosed) industry-standard deduplication technology to the extent that a Producing Party's data is reasonably capable of being deduplicated by industry standard eDiscovery tools algorithms. Hard copy Documents that contain unique information, such as hand-markings, highlighting, or post-it notes, shall not be eliminated as duplicates of responsive ESI nor of other responsive hard copy Documents.

   i.   The Parties shall de-duplicate exact duplicates of ESI horizontally (i.e., across the entire collection and across custodians). De-duplication must be done only at the Family Document level (i.e., if there are identical child Documents that have unique parents, they are not duplicates; an attachment to a document is not a duplicate of the same document maintained as a standalone document). An email that includes content in the BCC or other blind copy field shall not be treated as a duplicate of an email that does not include content in the BCC or other blind copy field, even if all remaining content in the email is identical. Exact duplicates of emails retrieved from different storage locations (i.e. desktop vs. laptop vs. smart phone) shall not be considered unique based solely on the originating storage location.

   ii.   To the extent reasonably practicable, all custodians who were in possession of the de-duplicated Document, and the file paths for each duplicate custodian's copy shall be identified in the "Custodian," "CustodianAll/CustodianOther," and "DupeLocations" metadata fields of the copy of the single record that is produced, separated by semicolons.

   iii.   If processing and production is done on a rolling basis, an updated Duplicate Custodians and DupeLocation fields with additional values shall be provided in an overlay. The Producing Party shall identify whether the overlay replaces previously produced fields for a file or supplement them. Such an overlay shall not be required for any documents previously produced if

11

a new custodian is added after the relevant documents have already been produced.

g.   **Embedded Objects:** Objects embedded in documents that are to be produced as TIFF images shall, when reasonably practicable, be extracted and produced as separate Child Documents with the family relationship maintained. Objects embedded in Documents that are produced in native format need not be produced as separate documents.

h.   **Pointer Hyperlinks.** The Parties agree to meet and confer in good faith to resolve any disputes concerning the appropriateness of the identification of family relationships for Documents containing pointer hyperlinks.  Each Party agrees that upon request by a Receiving Party (initially up to 350 requests), the Producing Party will investigate its ability to use available technology to match documents containing internal hyperlinks pointing to Documents on a system within a Producing Party's custody, possession, or control (e.g., such as an internal document management system, Google Drive, Google Docs, SharePoint, Office365, or similar document hosting and collaboration service) as part of the same family group as the Document residing at the location at which that Hyperlink points, to the extent those collections can be done in an automated, reasonable, and accurate manner using available technology. Should the Receiving Party identify a need for more than 350 such requests, the Parties agree to meet and confer regarding the need and scope of any such additional requests.

i.   **Collaboration Tools.** To the extent reasonably feasible, the Parties agree to produce the latest in time version of responsive ESI stored on a collaboration platforms or document management tools. To the extent the receiving party desires to receive previous versions of documents, if any, the receiving party will identify the document(s) with specificity and the parties will engage in a meet and confer process relating to the same.

j.   **Compressed Files:** Compression file types (i.e., .CAB, .GZ, .TAR, .z and .ZIP) shall be decompressed in a reiterative manner to ensure that a zip within a zip is decompressed into the lowest possible compression resulting in individual folders and/or files. Emails and their attachments shall be extracted separately and shall be produced with the family

relationship intact via the BegAttach and EndAttach fields identified in Appendix 1.

k. **Password-Protected, Encrypted, or Proprietary-Software Files:** With respect to any ESI items that are password-protected or encrypted, the Producing Party will take reasonable steps to break the protection. If there is potentially responsive password-protected or encrypted ESI, the password for which the Producing Party has been unable, after reasonable efforts, to locate, the Parties shall meet and confer.

## VII. Preservation

a. **Preservation Obligations:** The parties will take reasonable steps to preserve potentially relevant Documents and metadata consistent with the parties' obligations under the common law and the Federal Rules of Civil Procedure. Parties are required to act in good faith and may not convert electronic Documents to paper form or otherwise downgrade ESI in a manner that degrades its searchability or usability. By preserving Documents for the purpose of this litigation, the Parties are not conceding that such material is discoverable.

b. Parties shall take reasonable efforts to suspend any autodelete settings for email clients, chat or messaging applications, collaboration platforms, and similar software used by the parties that may contain potentially relevant information.

## VIII. PARAMETERS FOR COLLECTING DOCUMENTS

a. **Document Custodians and Custodial Data Sources:** Within the later of the following: (a) 30 days after service of responses and objections to a Party's document requests, or (b) 14 days after entry of this order, a Producing Party shall disclose in writing the information listed in (i) through (iii) below, as applicable. Each party shall amend or supplement its responses to items (i) through (iii) throughout this case if necessary to make the disclosures complete. Following such disclosures, if a requesting Party contends that additional custodians or custodial sources should be preserved, collected, searched, and produced, then the Parties shall meet and confer in good faith and, in the event the parties are unable to reach agreement, the requesting Party may seek relief from the Court.

i. An initial list of its own proposed document custodians ("Document Custodians"), including each person's job title;

ii. A list of the producing party's custodial and noncustodial devices and electronic communications and/or ESI storage systems and sources (e.g., personal computers, laptop computers, email, calendars, mobile devices, shared network storage or folders, structured data systems, etc.) that it has determined, based on reasonable inquiry, contain potentially relevant data; if that producing party excludes a potentially relevant ESI source from such disclosures, it shall identify the excluded data source and its reason for the exclusion (i.e burden, inaccessibility, etc.); and

iii. A description of any problems reasonably anticipated to arise in connection with production or preservation of ESI.

b. **Mobile Device ESI:** For Document custodians agreed on by the Parties or ordered by the Court, a producing Party will determine whether any unique responsive ESI items are located on any mobile devices, such as tablets, and applications used on those devices, used by any of those custodians, to the extent that the Producing Party has determined, based on reasonable inquiry, that the devices contain potentially relevant ESI If responsive ESI items are located on a mobile device by any of those custodians, then the Party shall collect those ESI items in a manner that preserves the content and metadata associated with those items. The Parties shall meet and confer regarding the search methodology for such document types.

IX. **Search Methods:**

a. **Search Methodology Disclosure:**  Unless all Parties otherwise agree or the Court orders otherwise, a Party is prohibited from combining search term and technology-assisted review methods to filter the corpus of documents to be reviewed.

i. Within the later of the following: (a) 30 days after service of responses and objections to a Party's document requests, or (b) 14 days after entry of this order, the Producing Party must disclose in writing (a) an initial list of search terms reasonably calculated to return relevant documents along with all other

search methodology parameters, and, if applicable, (b) a written description of the Review Automation methodology that the Producing Party intends to use. A producing Party's initial list of search terms must be accompanied by a hit report (in excel format) to facilitate discussion between the Producing Party and the Requesting Party.

ii. Any hit report will provide (a) the entire search string and (b) each search term: the number of document hits plus family members (de-duplicated across Family Documents).

b. **Search Term Negotiation Process:**

i. At the time the Producing Party discloses its proposed search terms, it shall disclose in writing any requests for production for which the Producing Party will not use search terms to identify responsive materials.

ii. At the time the Producing Party discloses its prosed search terms, it shall identify and explain in writing how it will search for and review materials for which it will not use text-based searches.

iii. The Parties agree to promptly meet and confer in good faith about any disagreement over search terms. The Producing Party shall provide sufficient information to make the meet and confer process meaningful, including providing information regarding grounds of overbreadth, and responsiveness of disputed search terms (including, upon request, by providing hit reports and sampling the hits on the proposed or disputed terms). The Parties shall raise any disputes regarding search terms to the Court within 30 days after the producing party's initial search term disclosure. The Parties agree that the Requesting Party may propose additional search terms in connection with subsequently served Requests for Production.

c. **Review Automation Negotiation Process.**

i. Within the later of the following: (a) 30 days after service of responses and objections to a Party's document requests, or (b) 14 days after entry of this order, a producing Party shall disclose whether or not it elects to use Review Automation, including the

15

use of artificial intelligence large language models ("AI"), to conduct its review. At the time of that disclosure, that Party shall disclose in writing the universe of Documents to which Review Automation will be applied; any types of ESI to be excluded from Review Automation or other culling techniques will be used prior to application of the Review Automation; the name and a description of the TAR tool to be used; the vendor; methodology of the training process; the methodology and results of the validation testing used; and how documents containing little or no text will be handled.

ii. At the time it discloses its intent to use Review Automation The Producing Party shall disclose their methods for validating the results of the Review Automation process.

iii. The Parties agree to promptly meet and confer in good faith regarding the Parties' use of Review Automation. The Parties shall raise any disputes regarding use of Review Automation and any validation methods to the Court within 30 days after the producing Party's disclosure of the items in (c)(i).

d. **Search of ESI Identifiable without Need of Electronic Search Methodology:** A Producing Party's use of electronic search methodology does not relieve the Producing Party of its obligations to produce known or reasonably knowable responsive Documents merely because they were not identified by electronic search methodologies. Such documents shall be produced promptly, and should not be withheld pending agreements regarding other aspects of discovery, e.g., agreements regarding search terms, custodians, or Review Automation.

e. **Search Methodology for Structured Data:** If ESI responsive to discovery requests is located in Structured Data Sources (such as ESI contained in, but not limited to, enterprise databases or database management systems (e.g., Oracle, SQL server, DB2, SalesForce, electronic accounting or customer management systems, etc.), the Parties shall disclose all such sources and the Parties shall meet and confer regarding the production format, content, and scope of Structured Data to be produced.

X.    **NON-PARTY DOCUMENT REQUESTS**

    a.    **Non-Party Document Subpoenas:** All non-Party document subpoenas shall be served on all counsel of record in compliance with Fed. R. Civ. P. 45. Service via email on a designated service list shall constitute compliance with Fed. R. Civ. P. 45.

    b.    **Non-Party Document Productions:** The recipient of a non-Party production shall serve a copy of that production on all counsel of record within fourteen (14) days of receiving the production. Service of documents or a file transfer link via email on a designated service list shall constitute compliance with this paragraph.

    c.    **Informing Non-Parties of This Order:** The Parties agree to provide a copy of this Order and the governing Protective Order with any Document subpoena served in this Litigation.

XI.    **MISCELLANEOUS PROVISIONS**

    a.    **Service of Discovery Requests and Disclosures:** All discovery requests and discovery-related disclosures may be served via email on a Party's counsel of record for the Litigation (i.e., all counsel of record for that Party).

    b.    **Inaccessible ESI:** If a producing Party asserts that certain categories of ESI that are reasonably likely to contain responsive information are not reasonably accessible or otherwise unnecessary under the circumstances, or if the Requesting Party asserts that, following production, certain ESI is not reasonably usable, the Parties shall meet and confer with their respective technology experts to discuss resolving such assertions

    c.    **Limitations.** Nothing in this ESI Protocol Order establishes any agreement as to either the temporal or subject matter scope of discovery or as to the relevance or admissibility of any hard-copy document or ESI. Nothing in this ESI Protocol Order shall be interpreted to require disclosure of information protected by any applicable privilege or work product doctrine. The Parties do not waive any objections as to the production, discoverability, admissibility, or confidentiality of hard-copy documents and ESI.

d.      **Variations or Modifications:** Variations from this ESI Protocol Order may be required. Any practice or procedure set forth herein may be varied by agreement of all affected Parties, which will be confirmed in writing. In the event a Producing Party determines that a variation or modification is appropriate or necessary to facilitate the timely and economical production of hard-copy documents or ESI, the Producing Party will notify the Requesting Party of the variation or modification Upon request by the Requesting Party, those Parties will meet and confer to address any issues in a reasonable and timely manner prior to seeking Court intervention.

**SO ORDERED**.

<u>**s/Jonathan J.C. Grey**</u>
Jonathan J.C. Grey
Date: April 28, 2026                    United States District Judge

So stipulated and agreed to by the Parties, April 17, 2026.

/s/ Natasha J. Fernández-Silber
Natasha J. Fernández-Silber (P83334)
**EDELSON PC**
200 South 1st Street
Ann Arbor, MI 48104
Tel: (312) 589-6370
nfernandezsilber@edelson.com

*Special Acting Attorney General
for the State of Michigan*

Jonathan S. Comish (P86211)
Assistant Attorney General
**Michigan Department of Attorney
General**
Corporate Oversight Division
P.O. Box 30736
Lansing, MI 48909
Tel: (517) 335-7632
comishj@michigan.gov

/s/ (with consent) Timothy G. Cameron
Timothy G. Cameron
Andrew C. Finch
Michael J. Zaken
**CRAVATH, SWAINE & MOORE
LLP**
Two Manhattan West
375 Ninth Avenue
New York, NY 10001
Telephone: (212) 474-1000
tcameron@cravath.com
afinch@cravath.com
mzaken@cravath.com

Scott T. Seabolt (P55890)
**HICKEY HAUCK BISHOFF
JEFFERS & SEABOLT, PLLC**
706 South Main Street
Plymouth, MI 48170
(734) 544-5525
sseabolt@hhbjs.com

*Counsel for Defendant Prime
Therapeutics LLC*

/s/ (with consent) Meghan McCaffrey
Meghan McCaffrey
Mike Bonanno
**QUINN EMANUEL URQUHART
& SULLIVAN LLP**
1300 I Street NW, Suite 900
Washington, D.C. 20005
Tel: (202) 538-8000
mikebonanno@quinnemanuel.com
meghanmccaffrey@quinnemanuel.com
Howard B. Iwrey (P39635)
**DYKEMA GOSSETT PLLC**
39577 Woodward Avenue, Suite 300

19

Bloomfield Hills, MI 48304
Tel: (248) 203-0700
hiwrey@dykema.com

Cody D. Rockey (P78653)
**DYKEMA GOSSETT PLLC**
2723 South State Street, Suite 400
Ann Arbor, MI 48104
Tel: (734) 214-7655
crockey@dykema.com

*Counsel for Defendants Express
Scripts, Inc. and Evernorth Health,
Inc.*

## Appendix 1:  ESI Metadata and Coding Fields

| Field Name[1] | Populated For (Email, Edoc, Calendar, Contact, Cellphone, or All) | Field Description |
|---|---|---|
| BegBates | All | Control Numbers. |
| EndBates | All | Control Numbers. |
| BegAttach | All | Control Numbers (First production Bates number of the first document of the family). |
| EndAttach | All | Control Numbers (Last production Bates number of the last document of the family). |
| PageCount | All | Number of printed pages in the document. |
| Custodian | All | Name of the custodian who possessed the document, in fonnat LastName, FirstName. In the case of deduplicated documents, the natural person or other source that had possession of the production copy is the Custodian, (ex. John Doe). |
| CustodianOther or CustodianAll | All | All custodians who were in possession of a de-duplicated document besides the individual identified in the "Custodian" field. |

---

[1] Field Names can vary from system to system and even between different versions of systems. Thus, Parties are to be guided by these Field Names and Descriptions when identifying the metadata fields to be produced for a given document pursuant to this ESI Protocol Order.

| Field Name[1] | Populated For (Email, Edoc, Calendar, Contact, Cellphone, or All) | Field Description |
|---|---|---|
| LogicalPath | All | To the extent feasible, the directory structure of the original file(s). To the extent feasible, any container name is included in the path. |
| DupeLocation | All | To the extent feasible, the absolute file path/directory path to the unproduced duplicate copies of files as they existed in their original environment, including the root container or directory name (e.g., folder, drive) and the files names of unproduced duplicate copies of files. For email, this includes the email folder path. The name the custodian should precede the file path |
| Hash Value | All | The MDS or SHA-1 hash value. |
| Email Thread ID | Email | Unique identification number that permits threading of email conversations. For instance, unique MS Outlook identification number ("PR CONVERSATION_INDEX") is 22 bytes in length, followed by zero or more child blocks each 5 bytes in length, that facilitates use of email threading. |
| Thread Index | Email | Message header identifier, distinct from "PRConversation Index", that |

22

| Field Name[1] | Populated For (Email, Edoc, Calendar, Contact, Cellphone, or All) | Field Description |
|---|---|---|
| | | permits threading of Email chains in review software. |
| Email Subject | Email | Subject line of email or calendar item. |
| DateSent | Email | Date email was sent. |
| DateModified | E-doc | Date the document was modified. |
| DateReceived | Email | Date the email was received. |
| TimeSent | Email | Time email was sent. |
| TimeModified | E-doc | Time the document was last modified |
| TimeCreated | E-doc | The Time Created metadata field of an E-doc |
| TimeZoneUsed | E-doc | Time zone used to process data during document collection and processing. |
| ReceiveTime | Email | Time email was received. |
| To | Email | All recipients that were included on the "To" line of the email. |
| From | Email | The name and email address of the sender of the email. |
| CC | Email | All recipients that were included on the "CC" line of the email. |

| Field Name[1] | Populated For<br><br>*(Email, Edoc, Calendar, Contact, Cellphone, or All)* | Field Description |
|---|---|---|
| BCC | Email | All recipients that were included on the "BCC" line of the email. |
| Importance | E-mails Calendar | Indicator of priority level set for message. |
| DateCreated | Edoc | Date the document was created. |
| FileName | Email, Edoc | File name of the edoc or email. |
| FileType | All | Application type |
| Title | Edoc | Any value populated in the Title field of the document properties. |
| Subject | Edoc | Any value populated in the Subject field of the document properties. |
| Author | Edoc | Any value populated in the Author field of the document properties. |
| NativeLmk | Native Files | The absolute file path to the native file as it existed in its original environment, including the root container or directory name (e.g., folder, drive). This field should be populated for both e-mail and e-files. |
| DocExt | All | File extension of the document. |
| TextPath | All | Relative path to the extracted text/OCR text file on the Production Media. |

24

| Field Name[1] | Populated For *(Email, Edoc, Calendar, Contact, Cellphone, or All)* | Field Description |
| --- | --- | --- |
| Redaction | All | User-generated field that will indicate whether a document is redacted |
| PrivRedacted | All | "X," "Y," "Yes," and "True" are all acceptable indicators that the document is redacted on the basis of privilege. Otherwise, blank. |
| Hard-Copy Document | All | "Y" if document is scanned from hard copy in connection with the collection and production of documents in this matter. |
| Confidentiality | All | Indicates the document's confidentiality under the Protective Order. Field should be populated with specific designation; if NO designation, field should be left blank. |
| Prod Volume | All | Production Volume Name |
| Source | All | The producing party |
| AttachCount | All | The number of attachments that are indicated in the document metadata. |
| AttachlDs | All | The IDs of the documents that are attached to the produced document. |
| Attachment Name | E-mails; e-docs | File name of the document attachment or embedded document; associated with parent/email which |

25

Case 2:25-cv-11215-JJCG-KGA   ECF No. 76, PageID.3590   Filed 04/28/26   Page 26 of 31

| Field Name[1] | Populated For (Email, Edoc, Calendar, Contact, Cellphone, or All) | Field Description |
|---|---|---|
| | | lists any and all filenames of the children/attachments delimited by a semicolon. The field would be populated for parent documents (not for the children). |
| Parent ID | E-mail attachments; embedded documents | Indicates the Parent ID for an attachment or embedded document. The parent document ID field should be set for all attachments (including attachments that are emails) but should not be set for parents. |
| MailFolder | E-mails | The name of the mail folder inside the mailbox. |
| MessageID | E-mails | The message ID of an email or other type of electronic message. |
| ApptEndTime | Calendar Events | The end time of a calendar event. |
| FileSize | Electronic documents; E-Attachments | The size of the file. |
| ModifiedBy | Electronic documents: E Attachments | The name of the last person who modified the document. |
| Comments | Electronic documents; E-Attachments | Comments that metadata extracted from the document. |

| Field Name[1] | Populated For<br><br>*(Email, Edoc, Calendar, Contact, Cellphone, or All)* | Field Description |
|---|---|---|
| ExceptionReasons | All | To the extent extracted in processing, populate with exception reasoning from processing software. |
| AttachRange | E-mails | Bates Number of the first page of the parent item to the Bates Number of the last page of the last attachment "child" item. |
| ExtractedText | All | Relative path to and filename of the extracted text for the produced ESI in the TEXT directory |
| DateLastPrinted | Electronic documents | The date the document was last printed |
| DateLastAccessed | Electronic documents | The date the document was last accessed |
| PrivType | All | If the document is withheld or redacted on privilege grounds, the type of privilege that is being asserted (e.g. attorney work product, attorney-client privilege) |

27

### Appendix 2:        Production Delivery Requirements

**1.    Contents of Production**

Productions shall have the following four directories: (1) IMAGES for the document images; (2) DATA for the .dat metadata load file and .opt image load files; (3) TEXT containing the extracted text/OCR files; and (4) NATIVES containing the original native files.

**2.    Production Files**

Whether produced via secure FTP, file share, or physical media, the files produced should be combined into a compressed file such as .zip, .rar, etc. The compressed file should be named to indicate the Producing Party, and the sequence of the production (e.g., "ABCProdVolOOl."). Production volume names should be consecutive. If the production is made using physical media, the media should be labeled to include (a) text referencing that it was produced in Civil Action No. 2:25-cv-11215; (b) and the production volume number.

**3.    Replacement Productions**

Any replacement production will be transmitted with a cover letter or email to identify the production as a replacement and cross-reference the BegBates and EndBates of the Documents being replaced. Replacement productions shall include load files necessary to link the replacement file to other previously produced Document Family members. Where the replacement document occupies more pages than an original placeholder image, the Producing Party shall apply an appropriate numerical suffix to the Bates number of the file (e.g., ABC000123.001 to ABC000123.005. If the replacement production is being transmitted by physical media, the media shall include the phrase "Replacement Production."

**4.    Specifications for Load Files**

    **A.    Image Load Files**

        **i.**    Image load (cross-reference) files should be produced in Concordance Image (Opticon) format.

        **ii.**    The name of the image load file should mirror the name of the delivery volume, and should have the appropriate extension (*e.g.,* ABC001.OPT).

    **iii.**    The volume names should be consecutive (*e.g.* ABC001, ABC002 et seq.).

    **iv.**    There should be one row in the load file for every TIFF image in the production.

    **v.**    Every image in the delivery volume should be cross-referenced in the image load file.

    **vi.**    The imageID key should be named the same as the Bates number of the page.

    **vii.**    Load files should not span across media (*e.g.*, CDs, DVDs, hard drives, etc.), *i.e.*, a separate volume should be created for each piece of media delivered.

    **viii.**    Files that are the first page of a logical Document should include a "Y".

    **ix.**    Subsequent pages of all Documents (regular document, email, or attachment) should include a blank in the appropriate position.

    **x.**    The file will be comma delimited file and consist of seven fields per document as follows (FolderBreak and BoxBreak should be left empty): ImageID, VolumeLabel, ImageFilePath, DocumentBreak, FolderBreak, BoxBreak, PageCount.

    **xi.**    Sample Concordance Image (Opticon) Load File:

        MSC000001,MSC001,D:\IMAGES\001\MSC000001.TIF,Y,,,3
        MSC000002,MSC001,D:\IMAGES\001\MSC000002.TIF,,,,

        MSC000003,MSC001,D:\IMAGES\001\MSC000003.TIF,,,,

        MSC000004,MSC001,D:\IMAGES\001\MSC000004.TIF,Y,,,2
        MSC000005,MSC001,D:\IMAGES\001\MSC000005.TIF,,,,

**B.**    **Concordance Data Load Files:**

    **i.**    Data load files should be produced in Concordance .DAT format.

    **ii.**    The data load file should use standard Concordance delimiters:

- Comma - ¶ (ASCII 20);

- Quote - þ (ASCII 254);

- Newline - ® (ASCII174).

**iii.** The first line of the .DAT file should contain the field names arranged in the same order as the data is arranged in subsequent lines.

**iv.** All date fields should be produced in mm/dd/yyyy format, if possible.

**v.** All attachments should sequentially follow the parent Document/email.

**vi.** Use carriage-return to indicate the start of the next record.

**vii.** The name of the data load file should mirror the name of the delivery volume, and should have a .DAT extension (*e.g.*, ABC001.DAT).

**viii.** The volume names should be consecutive (*e.g.*, ABC001, ABC002, et seq.).

Sample Concordance .DAT Load File:

þBegBatescþ¶þEndDocþ¶þBegAttachþ¶þEndAttachþ¶þPgCountþ¶ þC ustodianþ

## 5.   **Specifications for OCR/Extracted Text Files**

**A.** OCR or Extracted Text files shall be provided in a separate directory containing Document level text files (i.e., a single extracted text file per document).

**B.** Document identifiers shall have alphanumeric prefixes. Document identifiers with only numbers are improper.

**C.** Documents shall not be named with alphabetical suffixes. The text files must be named the same as the Bates number assigned to the corresponding file.

## Certificate of Service

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First-Class U.S. mail addresses disclosed on the Notice of Electronic Filing on April 28, 2026.

**s/ S. Osorio**
Sandra Osorio
Case Manager

31